UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAKEEM WINN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 5246 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| CITY OF CHICAGO, THOMAS KEANE, and ) | |
| JOHN RICHTER ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In March 2019, Plaintiff Rakeem Winn was arrested for armed robbery—a crime which, he alleges, he did not commit. The state eventually dropped all charges against him, but not before he spent more than two months at Cook County Jail and four months more in home confinement. Winn now brings suit against Chicago police officers Thomas Keane and John Richter for their role in his arrest and detention, and against the City of Chicago for direct and vicarious liability. Defendants Keane and Richter [23] and the Defendant City [24] move to dismiss all counts with prejudice. For the reasons discussed below, the motions are granted in part and denied in part.

## BACKGROUND

The amended complaint alleges the following facts, presumed true for purposes of this analysis. On March 2, 2019, Plaintiff Rakeem Winn, now a twenty-two-year-old resident of Chicago, was arrested by Chicago Police Department ("CPD") officers. (Am. Compl. [21] ¶¶ 1, 21.) The arrest arose from a shoplifting incident that occurred at a Macy's department store in Chicago several weeks earlier, on January 22, 2019. (*Id.* ¶ 2.) That evening, Macy's employees confronted an unknown man as he attempted to steal clothing. (*Id.*) The man announced that he was carrying a gun; in response to this announcement, according to Macy's employee Raceen

1

Taylor ("Taylor"), a brief struggle ensued, the man was disarmed, and he fled the scene. (*Id.*) The complaint does not make clear whether Taylor gave this account to the unnamed CPD officers who arrived at Macy's on January 22, or to the officers who returned to Macy's about five weeks later to investigate (discussed below). (*Id.*) Nor does the complaint offer any further information about CPD's investigation the night of January 22.

About a week after the incident, on January 30, CPD Detective John Richter ("Richter") contacted Macy's to request photographs of the offender. (*Id.* ¶ 3.) A Macy's employee (Tiffany Duncan) responded to Richter on February 6 by e-mailing a screenshot image of the offender taken from Macy's surveillance cameras, which recorded the incident. (*Id.* at ¶¶ 2–3.) The next day, an unidentified individual created an "Information Bulletin" about the incident and circulated the Bulletin among CPD officers and employees. (*Id.* ¶ 4.) The Bulletin, a copy of which is attached to the complaint, displayed the screenshot surveillance image of the offender, noted in bold that "[t]here is no probable cause to arrest at this time," and requested that any information about the offender's identity be sent to Officer John Richter.[1] (Ex. 2 to Compl. [1] at 14.)

Two weeks later, on February 21, Lieutenant Thomas Keane claimed to have identified Winn as the Macy's offender based on a black-and-white photo in a CPD Officer Safety Alert. (Am. Compl. ¶ 5.) This Alert contained five photographs, including a photograph (labeled "Winn") of a man wearing a hat and holding a gun, as well as photographs of two other men, a screenshot of a news program, and a photograph of guns. (Ex. 3 to Compl. at 15–16.) The complaint does not explain the purpose for this Safety Alert, who created it, or how such an Alert is typically used. Keane emailed a copy of the Safety Alert to Richter, along with the following message:

> Hi there- In knowing that Detective Richter sometimes needs a helping hand, we were able to put this together for him and identify his offender – again! I know it is

---

[1] Winn attached several exhibits to his original complaint. He referenced and incorporated these exhibits in his amended complaint, although he did not re-attach them. Defendants raise no objections to the exhibits. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (explaining that on a motion to dismiss, a court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

> not EVT[2] related but we thought that this looks like a bad guy and we would give it a go. Please let us know if it pans out and we can go and grab him! You are welcome John[.]

(Am. Compl. ¶ 5.) The next day, on February 22, an unidentified individual created a photo array containing a photograph of Winn and five other men. (*Id.* ¶ 6; Ex. 4 to Compl. at 18–19.)

On February 28—a week after Keane's identification of Winn and about five weeks after the initial shoplifting incident—Richter and CPD Officer McCarthy (his first name does not appear in the complaint) went to Macy's. (Am. Compl. ¶ 6.) There, Richter and McCarthy interviewed Raceen Taylor, the Macy's employee who observed the January 22nd incident. (*Id.*) Taylor told the officers that the offender had selected items of clothing from counters and display racks, entered a fitting room, and left the room "bulked-up" (wearing the clothes brought into the fitting room). (*Id.*) Richter and McCarthy presented Taylor with the photo array, and Taylor identified Winn as the offender. (*Id.*) The same day, Richter and McCarthy interviewed Macy's employees Dentae Carter and Tim Buchanan, who also witnessed the shoplifting incident, but did not show them the photo array or ask them to identify the offender. (*Id.* ¶ 7.) It is not clear whether these employees were interviewed before or after Taylor identified Winn, or why the officers declined to show the photo array to them.

On March 2, Winn was arrested at his home by CPD officers assigned to the 18th District, the District where Keane is assigned. (*Id.* ¶ 8.) The complaint does not state which officers arrested Winn, nor whether the officers had an arrest warrant. After his arrest, Winn agreed to speak with unidentified CPD officers. (*Id.* ¶ 9.) When shown the screenshot captured by Macy's surveillance cameras, Winn acknowledged that he "bore a slight resemblance" to the man in the image, but "adamantly denied" he committed the offense. (*Id.*) He was nonetheless charged with three counts of armed robbery pursuant to 720 ILCS 5/18-2(a)(2) and four counts of aggravated unlawful use of a weapon pursuant to 720 ILCS 5/24-1.6(a). (*Id.* ¶ 1.)

---

[2] The complaint does not make clear what the abbreviation "EVT" means.

3

The court set bond at $50,000. (*Id.* ¶ 10.) Winn remained in custody at Cook County Jail for approximately two and a half months while his family gathered funds for his release. (*Id.*) After posting bond on May 18, Winn was confined to his home and subject to electronic home monitoring. (*Id.*) In July, Winn's counsel for his criminal case (*People of Illinois v. Rakeem Winn*, Cook County, Case No. 2019 CR 0336401) received copies of the Macy's surveillance footage, which were apparently in color, as opposed to black-and-white. (*Id.* ¶¶ 1, 11.) These videos, Winn alleges, revealed that he was not the offender. (*Id.* ¶ 11.) The complaint also alleges that the discovery phase of the criminal case made "abundantly clear" that Winn was innocent, though it does not identify what the discovery phase uncovered, beyond the surveillance footage. In any event, the Cook County State's Attorney voluntarily dismissed all charges on September 6, 2019, more than six months after Winn's arrest. (*Id.* ¶ 12.)

One year later, on September 4, 2020, Winn brought this lawsuit, asserting federal and state-law claims against CPD officers Thomas Keane and John Richter (the "Defendant Officers"), the City of Chicago (the "City"), and the CPD [1]. In response to motions to dismiss the original complaint [16, 18], Winn filed an amended complaint, in which he voluntarily dismissed the CPD but otherwise asserted the same claims he raised earlier [21]. The Defendant Officers and the City have moved to dismiss the amended complaint with prejudice [23, 24].

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must contain sufficient factual matter to state a plausible claim to relief.[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts well-pleaded factual allegations as true and makes all reasonable inferences in favor of the plaintiff. *Flores v. City of S. Bend*, 997 F.3d 725, 728 (7th Cir. 2021).

---

[3] The City correctly notes that Winn cites exclusively to caselaw predating *Twombly* and *Iqbal* in his statement of the legal standard. (City's Reply [29] at 2–3.) The court applies the *Twombly/Iqbal* pleading standard in deciding these motions.

I.  **Constitutional Claims**

Winn brings two claims pursuant to 42 U.S.C. § 1983, asserting that the Defendants deprived him of his constitutional rights to due process (Count I) and subjected him to malicious prosecution (Count II). Winn also points to the Fourth Amendment as the constitutional source of the Defendants' duty "to act prudently and with reasonable care." (Am. Compl. ¶ 27.) Both § 1983 counts rely on similar factual allegations: the Officers "conducted a reckless investigation," "deliberately ignore[ed] Plaintiff's obvious innocence," subjected him to judicial proceedings without probable cause, and caused his "unjust incarceration and prosecution." (*Id.* ¶¶ 31–32, 37.) This "incarceration" includes Winn's time at Cook County Jail and in home confinement. (*Id.* ¶ 10.)

Recent caselaw suggests that Winn's allegations support a Fourth Amendment unlawful detention claim, rather than a malicious prosecution or due process claim. Following the Supreme Court's decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*"), the Seventh Circuit explained that "Fourth Amendment malicious prosecution is the wrong characterization," because "[t]here is only a Fourth Amendment claim—the absence of probable cause that would justify the detention." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*") (internal quotation marks omitted). Then, relying on *Manuel I* and *II*, the Seventh Circuit held that "the Fourth Amendment, not the Due Process Clause, governs a [§ 1983] claim for wrongful pretrial detention." *Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019). Courts in this district are divided on whether this conclusion was overruled by *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019), where the Supreme Court assumed without deciding that wrongful arrest and prosecution based on falsified evidence can be a deprivation of liberty under the Due Process Clause. *See Cusick v. Gualandri*, No. 20-CV-06017, 2021 WL 5447041, at *4–5 (N.D. Ill. Nov. 22, 2021). Since *McDonough*, the Seventh Circuit has reiterated that an unlawful pretrial detention claim stems from the Fourth Amendment, not the Due Process Clause—but the plaintiff in that case had

5

abandoned his due process claim on appeal. *Smith v. City of Chi.*, 3 F.4th 332, 336 & n.2 (7th Cir. 2021).

The court need not wade into this dispute at the pleadings stage. Even assuming Winn's unlawful detention claim stems exclusively from the Fourth Amendment, the court rejects the Defendants' invitation to dismiss Count I solely because it is entitled "Due Process."[4] The complaint points to the Fourth Amendment as the constitutional source of the Defendants' duties—and the Fourth Amendment is applied to the states through the Fourteenth. *See Manual II*, 903 F.3d at 668. In any event, Defendants responded to the complaint's wrongful detention allegations, and are not prejudiced by any mislabeling. Whether Plaintiff can prevail turns on whether Winn's arrest and detention were supported by probable cause, not whether he has invoked the Fourth or Fourteenth Amendment. *See Cusick*, 2021 WL 5447041, at *4–5 (collecting cases where courts in this district "declined to dismiss on the pleadings a Fourteenth Amendment unlawful detention claim brought in conjunction with a Fourth Amendment claim"). Defendants' challenge to Plaintiff's malicious prosecution claim has more traction, however: the Seventh Circuit does not appear to recognize this as a cause of action under § 1983. *See Manuel II*, 903 F.3d at 670 (rejecting a "Fourth Amendment malicious prosecution" characterization); *Serino v. Hensley*, 735 F.3d 588, 592–93 (7th Cir. 2013) (holding that availability of a state-law claim for malicious prosecution "eliminates the need" for a § 1983 due process claim, because the state law cause of action affords due process); *see also Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 706 (N.D. Ill. 2020) ("[U]nder prevailing law, there is no § 1983 claim for malicious prosecution.").

---

[4] Defendant Officers argue that Winn's allegations cannot support a traditional due process claim, as he provides no factual allegations about any misconduct causing a trial or conviction. (Officers' Mem. [23] at 10.) Winn does not respond to these arguments, nor the arguments that due process and malicious prosecution are not the proper causes of action for his allegations; instead, Winn focuses on his argument that the Officers lacked probable cause to arrest and detain him. (Pls.' Resp. [27] at 6–8.) To the extent the complaint alleges any other due process problems, Winn has forfeited those issues.

The court dismisses with prejudice Winn's claim for malicious prosecution (Count II), but considers the merits of his unlawful detention claim against the Defendant Officers and the City.

### A. Defendant Officers

Defendants argue that Winn has pleaded himself out of court for any unlawful detention claim, because the complaint establishes probable cause to arrest him. *See Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (explaining that probable cause defeats a § 1983 claim based on wrongful arrest or false imprisonment). Probable cause exists where a prudent officer would be warranted, based on known facts, in believing that the suspect had committed a crime. *Id.* The Seventh Circuit has consistently held that where "a reasonably credible witness informs an officer that a suspect has committed a crime," there is probable cause to arrest that suspect. *Id.* at 548; *see also Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013) (collecting cases). So, according to the Defendants, Raceen Taylor's identification of Winn in the photo array conclusively established probable cause and defeats his claim. In the court's view, the analysis is not so simple. The key issue is whether Taylor was "reasonably credible"—which, based on the complaint allegations, is a factual question that cannot be determined on a motion to dismiss. Taylor observed the shoplifting incident (the complaint does not describe her exact role), but Richter did not follow up with the photo array until *five weeks* later. Nor did Taylor, or anyone who observed the incident, identify Winn in person. Rather, she picked his image out of a black-and-white photo array of six faces, an identification not corroborated by any co-workers or fellow eyewitnesses.

Cases cited by Defendant Officers do not satisfy the court that the complaint must be dismissed. Defendants rely primarily on *Flores v. Walgreen Co.*, No. 08 C 7419, 2010 WL 3894091 (N.D. Ill. Sept. 30, 2010), but that case, decided on summary judgment rather than a motion to dismiss, is readily distinguishable. In *Flores*, two Walgreens employees observed a shopper engage in a fraudulent credit card transaction; five days later, those same employees saw Flores at the store, identified her as the shopper, and took her personal check, driver's license

7

number, and license plate number. *Id.* at *1–2. Based on that information, officers identified Flores, and just a week and a half after the initial incident, at least one Walgreens employee confirmed the identification in a photo spread. *Id.* at *2–3. So, in *Flores*, two eyewitnesses identified the plaintiff just five days after the crime; in this case, there never was any in-person identification of Winn. Other cases cited by the Officers are similarly distinguishable on the facts, or simply do not hinge on whether the eyewitness was "reasonably credible." *See Mustafa*, 442 F.3d at 546–47 (affirming summary judgment for officers who observed the plaintiff screaming and in the middle of a "commotion" at a crowded airport ticket counter, where the airline manager reported that the plaintiff had said, "Maybe I have a bomb"); *cf. Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (affirming summary judgment in favor of officers who arrested the plaintiff for trespassing on the strength of representations from a Wendy's manager that she was on Wendy's property; plaintiff was in fact on the public way); *Johnson v. Miller*, 680 F.2d 39, 41 (7th Cir. 1982) (affirming dismissal, on motion, of a case against arresting officer who executed a warrant issued for a person with the plaintiff's name, and failed to notice the physical discrepancy between the plaintiff and person described in the warrant).

Nor is the court persuaded by Defendant Officers' remaining arguments. In their introduction, the Officers assert that Richter and Keane made a "positive photo identification" of Winn, and then note at the end of their argument that the "surveillance photograph of the offender [ ] looked like [Winn]." (Officers' Mem. [23] at 2, 7.) But the court accepts the well-pleaded allegations of the complaint as true, at this stage. The complaint does not allege that Richter ever made a positive identification of Winn, either from the screenshot photograph or the surveillance video footage (which it does not appear Richter ever requested). The Officers make no real argument that Keane's "identification" of Winn—based on the black-and-white screenshot and a black-and-white photograph of unknown age and origin—can support probable cause, nor do they cite any legal authority for such a conclusion. Defendant Officers also note that in a post-arrest interview Winn himself acknowledged "a slight resemblance" to the man in the surveillance

8

screenshot. (Am. Compl. ¶ 9.) Winn's acknowledgement of a "slight resemblance" while adamantly denying guilt cannot support probable cause for an arrest that had already occurred.

Finally, Defendant Officers argue that even if Winn's claim against Richter survives, his claim against Keane should be dismissed for lack of personal involvement in the alleged constitutional deprivation. To hold an individual liable under § 1983, the plaintiff must demonstrate "a causal connection" between the sued officers and alleged misconduct. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). "Although direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cty.*, 327 F.3d 588, 590–91, 594 (7th Cir. 2003) (affirming summary judgment for sheriff where plaintiff was attacked by inmates belonging to a gang, but there was no evidence that defendant was aware of a prior gang-related attack or the attendant risk of assigning the plaintiff to a cell block housing gang members). The complaint alleges that Keane first made the connection between Winn and the shoplifting incident, referred to him as someone who "looks like a bad guy" and offered to "go and grab [Winn]." (Am. Compl. ¶ 5.) Then, officers from Keane's CPD 18th District arrested Winn. (*Id.* ¶ 8.) A more fully developed record may confirm that Keane's involvement was insufficient to hold him liable. But at the motion to dismiss stage, and drawing all reasonable inferences in Plaintiff's favor, the court concludes that Plaintiff has adequately pleaded a causal connection between Keane and Winn's unlawful arrest and detention. The Officer Defendants' motion to dismiss Count I is denied.

### B. The City

The Defendant Officers' liability under § 1983 does not mean that the City of Chicago is automatically liable. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Winn's suit against the City may proceed only if he shows that a municipal policy existed, the policy was the "moving force" behind his constitutional injury, and the policymakers acted with deliberate indifference. *Hall v. City of Chi.*, 953 F.3d 945, 950 (7th Cir. 2020). Municipal policies include widespread and well-settled practices or customs (which, at a minimum, requires more than one

9

to three instances of unconstitutional conduct). *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Failure to train employees may also provide a basis for municipal liability, though such liability is "rare." *Flores*, 997 F.3d at 731.

The City's arguments in support of its motion to dismiss boil down to a contention that the complaint's allegations are too "bare and conclusory" to state a claim for *Monell* liability. (City's Mem. [24] at 4.) Winn has offered no response beyond a single sentence that the Defendant Officers' misconduct "was due to either malice or abject indifference, which was caused by improper training." (Pls.' Resp. [27] at 7.) The court concludes that Winn has forfeited his claim of direct liability against the City. *See Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018) ("[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss."); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.").

To the extent Winn puts forth any argument regarding *Monell* liability, he hints at a failure-to-train theory. The complaint alleges that the City "failed to adequately train, supervise, and oversee Defendant Officers." (Am. Compl. ¶ 30.) Furthermore, the Officers' misconduct "was undertaken pursuant to routine practices of CPD to pursue wrongful convictions through reckless and profoundly flawed investigations and failure to properly supervise employees knowing that those employees were acting inappropriately," and the City therefore "maintain[ed] policies and practices that were the moving force during the foregoing constitutional violations." (*Id.* ¶ 34.) Although *Monell* claims are not subject to heightened pleading standards, *see White v. City of Chi.*, 829 F.3d 837, 844 (7th Cir. 2016), complex theories of *Monell* liability require somewhat higher levels of factual specificity. *See McCauley v. City of Chi.*, 671 F.3d 611, 616–17 (7th Cir. 2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Winn's boilerplate

10

allegation, which simply claims that the City failed to adequately train or supervise its officers, is insufficient.

The court acknowledges that Winn's complaint alleges that the City has a widespread practice of pursing wrongful convictions through flawed investigations. A claim of a widespread practice can proceed so long as the allegations do more than state the elements of a *Monell* claim. *See Taylor v. Norway*, No. 20-CV-7001, 2021 WL 4133549, at *4 (N.D. Ill. Sept. 10, 2021) (collecting cases); *Peterson v. City of Chi.*, No. 14-CV-9881, 2015 WL 13882814, at *3–4 (N.D. Ill. June 23, 2015) (same). Because Winn has not yet offered any affirmative argument or response in support of his *Monell* claim, however, the court dismisses his § 1983 claim without prejudice as against the City.

## II.    State-Law Claims

Next, Winn brings claims under Illinois law for intentional and negligent infliction of emotional distress against the Defendant Officers (Counts IV–V), and respondeat superior and indemnification against the City (Count III, VI).

### A.    Officer Defendants

In response to the Defendants' motions, Plaintiff has withdrawn his infliction of emotional distress counts. (Pls.' Resp. at 2.) The court agrees with the Defendant Officers that the claim for negligent infliction of emotional distress should be dismissed with prejudice. Because the Tort Immunity Act immunizes the Defendant Officers' liability for negligent conduct, any repleading would be futile. *See* 745 ILCS 10/2-202; *see also Tyagi v. Sheldon*, No. 16 C 11236, 2017 WL 4130532, at *20 (N.D. Ill. Sept. 18, 2017) (collecting cases).

Defendants contend that Winn's claim of intentional infliction of emotional distress should be dismissed with prejudice as well, but the court is less certain. Defendant Officers argue, first, that Winn's claim is barred by Illinois's one-year statute of limitations, *see* 745 ILCS 10/8-101, because Winn was arrested on March 2, 2019, but did not file suit until September 4, 2020. Under

11

*Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013), "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." More recently, however, the Seventh Circuit concluded that *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars a plaintiff from bringing a § 1983 suit for damages if that challenge would necessarily invalidate his conviction, also bars a plaintiff from bringing a § 1983 claim for unlawful detention until the end of that detention. *See Manuel II*, 903 F.3d at 670; *Smith*, 3 F.4th at 339–40. Courts in this district have extended the *Heck* rule to intentional infliction of emotional distress claims. *See Hill v. Cook Cty.*, 463 F. Supp. 3d 820, 844–45 (N.D. Ill. 2020) (collecting cases); *see also Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1111–13, 948 N.E.2d 1100, 1107–08 (4th Dist. 2011) (adopting the *Heck* rule for Illinois claims). Winn was released from jail on May 18, 2019, but not released from his bond conditions (which included home confinement and electronic monitoring) until September 6, 2019—a date which would render Winn's claim timely. *See Smith*, 3 F.4th at 342 (explaining that non-standard bond conditions may qualify as detention where they involve "the present and significant restriction of freedom").

      The Officers also argue that Winn's factual allegations are insufficient to demonstrate extreme and outrageous conduct or the Officer's intent to cause emotional distress, but the court cannot say with certainty that future repleading would be futile. *See Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 84, 58 N.E.3d 680, 700 (denying motion to dismiss where special prosecutors allegedly "fabricated and manufactured evidence and concealed exculpatory evidence for the purpose of falsely and maliciously detaining, arresting, and charging plaintiffs, knowing that such charges lacked probable cause"); *Padilla v. City of Chi.*, 932 F. Supp. 2d 907, 929 (N.D. Ill. 2013) (denying summary judgment where officers "knowingly arrested [plaintiff] without probable cause, transported him around town and brought him to jail, where he stayed for eight months"). True, Winn has already amended his complaint in response to earlier motions to dismiss, but he did so before the court commented on the sufficiency of the original complaint. *Cf. Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994) (explaining that dismissal with prejudice

12

was not an abuse of discretion where plaintiff's second amended complaint restated claims the court had already dismissed). The court dismisses both state-law claims against the Defendant Officers, but concludes that dismissal with prejudice is appropriate only for Winn's negligent infliction of emotional distress claim (Count V), not for his claim for intentional misconduct (Count IV).

### B. The City

The court's conclusion concerning Winn's state-law claims requires dismissal of his respondeat superior claim against the City (Count III) as well. Respondeat superior liability rises and falls with the state-law claims against the Officers. *See Brown v. Zydek*, No. 15 C 1044, 2016 WL 4366592, at *6 (N.D. Ill. Aug. 16, 2016) ("[T]here can be no respondeat superior liability where there are no surviving state-law claims."); *see also Flores*, 997 F.3d at 731 ("Municipalities do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents.") The City insists that Illinois law requires that any stand-alone respondeat superior claim must be dismissed with prejudice, and the court agrees that respondeat superior is not a basis for an independent claim; it is instead a theory on which the City can be held liable for torts committed by officers. *See Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 24, 981 N.E.2d 971, 980 (explaining that because "vicarious liability is not itself a claim or cause of action," actual agency and apparent agency are not separate causes of action for res judicata); *Jones v. UPS Ground Freight, Inc.*, No. 15 C 7991, 2016 WL 826403, at *3 (N.D. Ill. Mar. 3, 2016) (holding that the plaintiff forfeited a response to the defendant's argument that respondeat superior is merely a theory of liability and noting that the defendant was correct). This does not require dismissal of claims against the City with prejudice, however. Because Winn is free to replead his intentional infliction of emotional distress claim, he is free to seek to impose respondeat superior liability against the City as well.

Winn has also asserted that the City is liable to indemnify Officers for the § 1983 violation. *See* 745 ILCS 10/9-102 (imposing a statutory duty on local public entities to indemnify employees

for actions taken in their official capacity); *see also Cates v. Manning*, No. 19 C 5248, 2020 WL 1863299, at *3 (N.D. Ill. Apr. 14, 2020) ("[Section] 1983 plaintiffs routinely assert section 9-102 indemnification claims against municipalities simultaneously with the underlying claims against the individual officers who may have harmed them."). The City remains a defendant in this lawsuit for indemnification purposes. [5]

## **CONCLUSION**

Defendants' motions [23, 24] are granted in part and denied in part. Count II (malicious prosecution under § 1983) and Count V (negligent infliction of emotional distress) are dismissed with prejudice. The court dismisses Count III (respondeat superior) and Count IV (intentional infliction of emotional distress) without prejudice. Finally, Count I (due process under § 1983) is dismissed without prejudice as against the City, but will proceed against the Officer Defendants. Count VI (indemnification against the City) also survives this motion. Defendants are directed to file answers to the claims that stand within 21 days.

ENTER:

Dated: January 6, 2022

REBECCA R. PALLMEYER
United States District Judge

---

[5] The City asks the court to hold Plaintiff's respondeat superior and indemnification claims waived. The court dismisses the respondeat superior claim on the merits, and Winn correctly (albeit briefly) notes that his indemnification count survives so long as the court finds no probable cause existed. (Pl.'s Resp. at 5.) The court will not dismiss the City on this basis.